# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SARINDA LEE RIDDLE, )
)
       Plaintiff, )
)
v. ) Case No. CIV-16-25-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
       Defendant. )

## OPINION AND ORDER

The claimant Sarinda Lee Riddle requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born October 15, 1969, and was forty-four years old at the time of the most recent administrative hearing (Tr. 118, 903). She attended college several years, and has worked as an office manager, show hostess, and shelter monitor (Tr. 921-22). The claimant alleges that she has been unable to work since September 19, 2003, due to end stage renal disease, arthritis, gastroparesis, erosive esophagitis, high blood pressure, depression, diabetes, and anemia (Tr. 161).

**Procedural History**

On February 24, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 8, 2009 (Tr. 13-21). The Appeals Council denied review, but this Court reversed the decision of the Commissioner in Case No. CIV-11-83-SPS and remanded the case to the ALJ with instructions to further analyze the claimant's treating physicians' opinions (Tr. 945-57). ALJ Doug Gabbard, II conducted a second administrative hearing and determined that the claimant was not disabled in a written opinion dated April 23, 2014 (Tr. 855-71). The Appeals Council denied review, so the ALJ's April 2014 opinion is the

final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with occasional climbing, stooping, kneeling, crouching, and crawling; no balancing; and no overhead reaching (Tr. 861). Additionally, the ALJ found the claimant required the option to alternate sitting and standing every fifteen to thirty minutes throughout the workday without leaving the workstation (Tr. 861). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as an office manager, and alternatively because there was work she could perform in the national economy, *i. e.*, appointment clerk, telephone solicitor (Tr. 869-71).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the opinions of treating providers Dr. Kumar, Dr. Stafford, and Mr. Strong; and (ii) properly evaluate her subjective complaints of fatigue and pain. The Court finds the claimant's contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of renal disease, diabetes with neuropathy, obesity, arthritis, and status post arthroscopic bilateral shoulder surgery, but that her hypertension, chest pain, retinopathy, chronic fatigue, anemia, hypothyroidism, obstructive sleep apnea, joint problems, hip and knee problems, elbow

pain, back pain, gastroesophageal reflux disease, allergies, skin lesion, dizziness, hyperprolactinemia, and depression were non-severe (Tr. 858). The relevant medical record reveals that that the claimant was hospitalized with chronic renal insufficiency on September 27, 2003, January 2, 2004, and March 12, 2004, and with acute renal failure on June 6, 2004, and August 9, 2004 (Tr. 223-28, 253-54, 267-68, 293-94, 300-01). Dr. Satish Kumar, a nephrologist, consistently monitored the claimant's kidney functioning from October 2003 through October 2012, and after 2004 regularly noted her kidney disease was stable and included no related limitations in his notes (Tr. 487, 496, 504, 513, 524-41, 1266, 1301, 1309, 1404, 1433, 1448, 1459). On November 7, 2005, Dr. Kumar completed a Medical Source Statement ("MSS") in connection with the claimant's application for Temporary Assistance to Needy Families ("TANF") wherein he opined that the claimant was unable to work or participate in any training program due to kidney failure from diabetes (Tr. 844-45). He completed similar statements on July 6, 2006, referencing chronic kidney disease and rheumatoid arthritis as support, and also on October 15, 2007, referencing renal failure, diabetes, and arthritis as support (Tr. 838-39, 842-43).

Between June 2007 and April 2013, physician assistant Mika Strong (a provider at Dr. Stafford's clinic) regularly treated the claimant with medication for diabetes, hypertension, gastroesophageal reflux disease, allergies, chronic kidney disease, asthma, and depression (Tr. 1109-46). His physical examinations were generally normal, although he did note a small ulcer on the claimant's left foot in June 2010, a nodule on her left hand in September 2010, and "popping" on flexion and extension of her left

thumb in July 2011 (Tr. 1118, 1120, 1122). On June 12, 2009, Dr. Stafford and Mr. Strong completed a joint MSS wherein they opined that the claimant could lift/carry less than ten pounds frequently and two to three pounds occasionally; stand/walk five to ten minutes at a time for one hour total during an eight-hour workday; sit for one hour at a time for four hours total on a good day, and sit less than one hour at a time for total of one hour on a bad day; needed to lie down during the day to manage pain or other symptoms; was limited in her ability to push/pull (with no further description); could never climb balance, stoop, kneel, crouch, or crawl; could occasionally reach, handle, finger, and feel; and had environmental limitations regarding heat, dust, and fumes (Tr. 635-36). In support of their limitations, Dr. Stafford and Mr. Strong noted the claimant had multiple joint surgeries, and saw a rheumatologist, nephrologist, and endocrinologist (Tr. 636). They indicated that their description of the claimant's limitations were applicable from June 13, 2007, through June 12, 2009 (Tr. 635-36). Mr. Strong completed a similar MSS on October 10, 2013, except it applied from June 13, 2007, to "present." (Tr. 1158-59).

Dr. Ira Targoff, a rheumatologist, treated the claimant for, *inter alia*, hip and shoulder pain between July 2006 and December 2012 (Tr. 433-35, 440, 442, 449-50, 455-57, 459-62, 1273-77, 1377-78). The claimant underwent left shoulder arthroscopy on February 26, 2008, and right shoulder arthroscopy on January 16, 2009, due to bilateral shoulder pain (Tr. 597-98, 663-65). Thereafter, the claimant reported some continued pain in her shoulders, but had no reduced motion as she had prior to surgery (Tr. 1273, 1379, 1425). On July 20, 2006, the claimant a reported a nine-year history of hip pain

that began during her pregnancy, and she consistently reported hip pain to Dr. Targoff thereafter (Tr. 433, 452, 459, 1273, 1379, 1425). On examination, Dr. Targoff found the claimant had limited flexion to about ninety degrees bilaterally and pain with internal rotation (Tr. 461). He referred the claimant for hip x-rays, the results of which were normal (Tr. 453). On October 16, 2007, Dr. Targoff noted the claimant had pain in her hips with rotation, but good flexion (Tr. 434). On September 2, 2010, Dr. Targoff noted no evident pain when the claimant walked into the room or got on the exam table, but he found pain and limitation in her hips on internal rotation, and pain on flexion to "a little less" than ninety degrees (Tr. 1276). Hip x-rays taken that day were unremarkable (Tr. 1098-99). By December 2012, the claimant's range of motion in her hips improved, but nonetheless remained reduced (Tr. 1382). An MRI conducted in January 2012 revealed no soft tissue edema, but there was a physiologic amount of fluid in both hips (Tr. 1102-03). Dr. Targoff was uncertain about a diagnosis for the claimant's hip pain, but indicated it was likely related to her diabetes (Tr. 1276, 1382 1427-28).

State reviewing physician Dr. Penny Aber completed a Physical Residual Functional Capacity Assessment on January 22, 2008, and indicated that the claimant had functional abilities consistent with a limited range of sedentary work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and no overhead reaching bilaterally (Tr. 582-88). Her assessment was affirmed on review (Tr. 630).

At the most recent administrative hearing, the claimant testified that she had used a wheelchair for the previous two or three years due to arthritis in her back, hips, shoulders, and knees that makes walking painful for her, but that she had not been

prescribed a wheelchair (Tr. 907, 920). She further testified that she cannot take any type of medication for pain due to her illnesses, diabetes in particular (Tr. 907, 911). As to her diabetes, she stated that her insulin pump had been effective, but that it was becoming less effective because her kidneys were failing (Tr. 907). She stated that if her diabetes, kidney problems, and arthritis went away, she would be able to work (Tr. 909-10). Additionally, she stated that she spends about one-hundred percent of her time in bed, including meal time, sleeps fourteen to sixteen hours per day, and is in pain anytime she sits (Tr. 910, 197). She further stated she goes to the store once per month, and uses the riding cart while she is there; does not cook, do any household cleaning, or attend her daughter's school activities; and has assistance with personal care such as getting dressed, putting on shoes and socks, and getting in and out of the shower (Tr. 918-20).

The claimant first argues that the ALJ erred in assessing the treating physician opinions in the record. Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"),

*quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted].

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical record. He gave little weight to Dr. Kumar's opinions because: (i) he opined on an issue reserved to the Commissioner; (ii) he assessed no specific functional limitations; (iii) he provided no support for his opinion other stating than the claimant's diagnoses; (iv) his opinions were inconsistent with his own treating notes, which reflect stable chronic renal disease, and renal failure only during hospitalizations between September 2003 and October 2004; and (v) his opinions were inconsistent with other medical evidence including OU Medical providers' treatment notes reflecting well-controlled blood pressure and diabetes, post-surgical findings related to the claimant's

shoulders, and Dr. Targoff's treatment notes, which do not contain a diagnosis of rheumatoid arthritis (Tr. 865-66). As to the opinions of Dr. Stafford and Mr. Strong, the ALJ assigned them little weight because: (i) they provided no support other than stating the claimant had multiple joint surgeries and sees several specialists; (ii) their opinions were inconsistent with their own treatment notes, which reflect routine, conservative treatment, and normal physical exam findings; (iii) they are not specialists; and (iv) their opinions were inconsistent with other medical evidence including post-surgical findings related to the claimant's shoulders, Dr. Targoff's treatment notes, and Dr. Kumar's treatment notes (Tr. 866-67). The ALJ then gave great weight to the state agency physicians' opinions as to the claimant's exertional and postural limitations, but further limited her to no balancing in light of her obesity and Dr. Kumar's September 2013 treatment note indicating the same, and required a sit/stand option to relieve pain and other discomfort (Tr. 867). Accordingly, the ALJ adequately discussed and analyzed each of the opinions contained in the record. His findings indicate that he considered each opinion in turn and gave reasons for adopting or not adopting the limitations described in them. Notably, although Mr. Strong is not a treating physician, the ALJ nonetheless analyzed his opinions as if he were. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted]. Accordingly, he did not commit error in failing to include further limitations for the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and

Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Additionally, in a largely undeveloped argument, the claimant asserts that the ALJ did not properly evaluate her subjective allegations of fatigue and pain. In support, she references numerous instances in the record where she reported fatigue to her providers. In light of these references, the claimant's argument is not that the ALJ failed to properly evaluate her subjective allegations of fatigue and pain, but rather that he did not consider all of the evidence related to her fatigue and pain. This contention is also without merit. At step two, the ALJ thoroughly discussed the claimant's fatigue, setting forth the reasons why he found it non-severe (Tr. 858). As to the claimant's pain, the ALJ likewise discussed at length why he found her hip pain, knee pain, and elbow pain were non-severe impairments at step two, and at step four, he discussed the claimant's post-surgical findings related to her shoulders, as well as Dr. Targoff's treatment notes where he examined her shoulders, hips, elbows, knees, and/or ankles (Tr. 858, 863-64). Furthermore, the ALJ then added additional restrictions to the claimant's RFC due to her obesity, possible diabetic neuropathy, and pain (Tr. 867). Although the ALJ did not point out every instance where the claimant reported fatigue and/or pain, he did specifically note every medical and non-medical record available in this case, *and still concluded* that she could work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can

-11-

determine RFC within that category.'"), *quoting Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004). Thus, the ALJ did not err in considering the evidence related to the claimant's fatigue and pain.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 27th day of September, 2017.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**